# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| CLIFF RICK, | ) 3:10CV1779 |
| | ) |
| Petitioner | ) JUDGE JAMES G. CARR |
| | ) (Magistrate Judge Kenneth S. McHargh) |
| v. | ) |
| | ) |
| MICHAEL SHEETS, | ) |
| Warden, | ) |
| | ) |
| Respondent | ) REPORT AND RECOMMENDED |
| | ) DECISION OF MAGISTRATE JUDGE |

McHARGH, MAG. J.

The petitioner Cliff Rick ("Rick") has filed a petition through counsel for a writ of habeas corpus, arising out of his 2008 convictions for murder and other crimes, in the Marion County (Ohio) Court of Common Pleas.  In his petition, Rick raises two grounds for relief:

> 1.  The trial court committed reversible error and denied Mr. Rick his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when it improperly instructed the jury regarding the affirmative defense of self defense and the jury's obligation to consider that affirmative defense, and compounded its errors by allowing the prosecutor, over objection, to misstate the law regarding affirmative defense.

> 2.  The prosecutor's repeated misconduct at trial denied Mr. Rick a fair trial and due process of law, in violation of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution.

(Doc. 1, at § 12.)  The respondent has filed an Answer/Return of Writ (doc. 9), and Rick has filed a Traverse (doc. 15).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural

background:

> This matter stems from the shooting death of Sydney Bell ("Bell") on
> approximately November 7, 2007. It is undisputed that Rick was
> responsible for the shooting death of Bell. However, at trial, Rick relied
> on a claim of self defense.
>
> On November 14, 2007 Rick was indicted on one count of Aggravated
> Murder in violation of R.C. 2903.01(A) containing a Three Year
> Firearm Specification, one count of Tampering with Evidence in
> violation of R.C. 2921.12(A)(1), and one count of Possession of Cocaine
> in violation of R.C. 2925.11(A),(C)(4). On November 19, 2007 Rick pled
> not guilty to all charges.
>
> On December 12, 2007 Rick was also indicted on Possession of Cocaine
> in violation of R.C. 2925.11(A),(C)(4) and Illegal Use or Possession of
> Drug Paraphernalia in violation of R.C. 2925.14(C)(1). Rick pled not
> guilty to these newly indicted charges on December 17, 2007.
>
> A jury trial was held from April 14, 2008 to April 18, 2008. At the
> conclusion of trial, the jury found Rick guilty of Murder, Tampering
> with Evidence, Possession of Cocaine, and Possession of Drug
> Paraphernalia.
>
> On May 20, 2008, Rick was sentenced to a term of 15 years to life in
> prison for one count of Murder, in violation of R.C. 2903.02(A); five
> years in prison for one count of Tampering with Evidence, in violation
> of R.C. 2921.12(A)(1), a felony of the third degree; eight months in
> prison for one count of Possession of Cocaine, in violation of R.C.
> 2925.11(A),(C)(4), a felony of the fifth degree; and 30 days in jail for
> one count of Illegal Use or Possession of Drug Paraphernalia, in
> violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor.
> Additionally, a Three Year Firearm Specification, pursuant to R.C.
> 2941.145, carrying a mandatory three year prison term was attached
> to the count of Murder.
>
> The trial court ordered the sentences for Murder and the Firearm
> Specification, Tampering with Evidence, and Possession of Cocaine be
> served consecutively and concurrently to the charge of Illegal Use or

Possession of Drug Paraphernalia. Rick's total sentence was twenty-three years and eight months to life.

(Doc. 9, RX 13; State v. Rick, No. 9-08-27, 2009 WL 427522, at *1 (Ohio Ct. App. Feb. 23, 2009).)

Rick filed a timely direct appeal, setting forth the following five assignment of errors:

1.  The trial court violated Mr. Rick's rights to due process and a fair trial when it entered a judgment of conviction for murder, when that judgment was against the manifest weight of the evidence, in violation of Mr. Rick's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

2.  The trial court committed reversible error when it improperly instructed the jury regarding the affirmative defense of self defense and the jury's obligation to consider that affirmative defense, and compounded its errors by allowing the prosecutor, over objection, to misstate the law, in violation of Mr. Rick's Fifth, Sixth, and Fourteenth Amendment Rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

3.  The prosecutor's misconduct denied Mr. Rick a fair trial and due process of law, in violation of his Fifth, Sixth, and Fourteenth Amendment Rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

4.  The trial court committed reversible error when it failed to instruct the jury on voluntary manslaughter, and failed to instruct the jury on the affirmative defense of duress regarding the tampering with evidence charge, in violation of Mr. Rick's Fifth, Sixth, and Fourteenth Amendment Rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

5.  Defense counsel rendered ineffective assistance of counsel in violation of Mr. Rick's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.

(Doc. 9, RX 10.)

On Feb. 23, 2009, the state court of appeals affirmed the judgment of the trial court.  (Doc. 9, RX 13; Rick, 2009 WL 427522.)

Rick filed a timely appeal of that decision to the Supreme Court of Ohio, asserting the following three propositions of law:

> 1.  A trial court commits reversible error and violates an accused's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution, when it improperly instructs the jury regarding the affirmative defense of self-defense and the jury's obligation to consider that affirmative defense, and compounds its errors by allowing the prosecutor, over objection, to misstate the law regarding the affirmative defense of self-defense.
>
> 2.  A prosecutor's repeated misconduct during the course of an accused's jury trial denies the accused his rights to a fair trial and due process of law, in violation of the accused's Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution.
>
> 3.  Trial counsel renders ineffective assistance of counsel in violation of an accused's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitutions, and Sections 10 and 16, Article I of the Ohio Constitution, when trial counsel fails to object to erroneous jury instructions which lead to an accused's wrongful conviction.

(Doc. 9, RX 15.)

On July 1, 2009, the Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  (Doc. 9, RX 17; State v. Rick, 122 Ohio St.3d 1456, 908 N.E.2d 946 (2009).)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal courts must apply when considering applications for a writ of habeas corpus.  Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court.  The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

5

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

### III.  PROCEDURAL DEFAULT

The respondent contends that Rick has procedurally defaulted the first ground of his petition, concerning the trial court's jury instructions on self-defense.  (Doc. 9, at 8-12.)

In his second assignment of error on direct appeal, Rick claimed that the trial court erred when it improperly instructed the jury regarding the affirmative defense of self defense.  (Doc. 9, RX 10, at 9-11.)  The court of appeals rejected his argument.

The state court noted that Rick did not raise a contemporaneous objection to the jury instructions at trial.  The court pointed out that, absent plain error, the failure to object to the jury instructions waived the issue for appeal.  (Doc. 9, RX 13; Rick, 2009 WL 427522, at *6.)  Rick had claimed that the instructions did not properly include the issue of "duty to retreat."  (Doc. 9, RX 10, at 10.)  On plain error review, the court of appeals found that the instructions as given were a correct statement of the law.  (Doc. 9, RX 13; Rick, 2009 WL 427522, at *7.)  The court also pointed out that, in light of substantial evidence that the victim was asleep when he was shot by Rick,

6

. . . it is unlikely that the jury would have reached the issue as to whether Rick had a duty to retreat in analyzing his claim of self-defense. Therefore, the trial court's failure to instruct more fully on the duty to retreat was harmless error.

(Doc. 9, RX 13; Rick, 2009 WL 427522, at *9.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)). To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)). A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules. Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief. Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977); Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000), aff'd, 507 F.3d 916 (6th

Cir. 2007).  Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Buell, 274 F.3d at 348 (quoting Coleman, 501 U.S. at 750); Davie v. Mitchell, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004), aff'd, 547 F.3d 297 (6th Cir. 2008), cert. denied, 130 S.Ct. 503 (2009).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

The court of appeals overruled Rick's challenge to the jury instructions on appeal, because he had not lodged a timely objection at trial, and he did not show plain error.  (Doc. 9, RX 13; Rick, 2009 WL 427522, at *6-*9.)  The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and

independent state ground barring federal habeas review, and that the application of plain error review constitutes enforcement of the rule.  Biros v. Bagley, 422 F.3d 379, 387 (6th Cir. 2005), cert. denied, 549 U.S. 853 (2006).  See generally Wainwright, 433 U.S. at 86-88 (contemporaneous objection rule adequate & independent state ground to foreclose habeas review); Gulertekin v. Tinnelman-Cooper, 340 F.3d 415, 424 (6th Cir. 2003) (Ohio's contemporaneous objection rule); Weeks v. Jones, 26 F.3d 1030, 1045-1046 (11th Cir. 1994), cert. denied, 513 U.S. 1193 (1995); Loza v. Mitchell, No. C-1-98-287, 2002 WL 1580520, at *28-*30 (S.D. Ohio June 11, 2002) (citing Scott v. Mitchell, 209 F.3d 854, 867-871 (6th Cir.), cert. denied, 531 U.S. 1021 (2000)).

As to the fourth Maupin factor, "cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule.  Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  Rick does not argue cause.  See generally doc. 15, at 4-6.

However, Rick contends that the court should address the issue on the merits because "the constitutional error caused a fundamental miscarriage of justice." (Doc. 15, at 5-6.)  The "fundamental miscarriage of justice" test is met only in the "extraordinary case" where "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Hargrave-Thomas v. Yukins, 374 F.3d 383, 389 (6th Cir. 2004), cert. denied, 544 U.S. 979 (2005) (quoting Carrier, 477 U.S.

at 496); see also Souter v. Jones, 395 F.3d 577, 588-590 (6th Cir. 2005).  Rick makes

no such showing.

The petition should not be granted on the first ground for relief, which was

procedurally defaulted.

## IV.  PROSECUTORIAL MISCONDUCT

The second ground of the petition is prosecutorial misconduct.  Rick contends

that:  (1) the prosecutor improperly commented on his invocation of his right to an

attorney; (2) during closing argument, the prosecutor misstated the law regarding

self-defense; and, (3) during closing, the prosecutor expressed his opinion to the jury

that the defendant was untruthful.  (Doc. 1, at pp. 17-18; see also doc. 9, RX 10, at

12-18 (brief on appeal).)

The state court of appeals first addressed Rick's claim by setting forth the

standard of review:

> In his third assignment of error, Rick argues that the prosecutor's
> misconduct denied him a fair trial.  Specifically, Rick argues that the
> prosecutor impermissibly commented on Rick's silence, made
> inappropriate sidebar comments within the hearing of the jury, and
> made improper statements during closing argument.
>
> "The test for prosecutorial misconduct is whether remarks were
> improper and, if so, whether they prejudicially affected substantial
> rights of the accused.  The touchstone of analysis is the fairness of the
> trial, not the culpability of the prosecutor."  State v. Jones, 90 Ohio
> St.3d 403, 420, 739 N.E.2d 300, 2000-Ohio-187 (internal citations
> omitted).  An appellate court should consider several factors in making
> this determination: "(1) the nature of the remarks, (2) whether an
> objection was made by counsel, (3) whether corrective instructions
> were given by the court, and (4) the strength of the evidence against

10

the defendant." State v. Braxton (1995), 102 Ohio App.3d 28, 41, 656
N.E.2d 970.  The reviewing court should also ask whether the
misconduct was an isolated incident in an otherwise properly tried
case.  Id.  A prosecutor's misconduct will not be considered grounds for
reversal unless the misconduct has deprived the defendant of a fair
trial.  Id.

(Doc. 9, RX 13; Rick, 2009 WL 427522, at *9.)

The state court based its rulings on state law, not federal constitutional law,
so the question before this habeas court is whether the state court's rulings are
contrary to clearly established federal law, as determined by the Supreme Court of
the United States.  A state court decision is "contrary to" clearly established
Supreme Court precedent "if the state court applies a rule that contradicts the
governing law set forth in [Supreme Court] cases."  Williams, 529 U.S. at 405; see
also Davis v. Lafler, 658 F.3d 525, 530 (6th Cir. 2011) (en banc).  The source of
"clearly established law" is limited to U.S. Supreme Court cases, not the rulings of
lower federal courts.  Williams, 529 U.S. at 412; see also Harrington v. Richter, 131
S.Ct. 770, 786 (2011); James v. Brigano, 470 F.3d 636, 643 (6th Cir. 2006) (6th
Circuit caselaw is not "clearly established federal law" for habeas purposes); Smith
v. Stegall,  385 F.3d 993, 998 (6th Cir. 2004), cert. denied, 544 U.S. 1052 (2005);
Martin v. Wilson, 419 F.Supp.2d 976, 980 (N.D. Ohio 2006).

A claim of prosecutorial misconduct involves the Fourteenth Amendment Due
Process Clause.  The appropriate standard for such a claim on habeas review is "the
narrow one of due process," not the broader review which would be applied on direct

appeal.[1]  Darden v. Wainwright, 477 U.S. 168, 181 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974); West v. Bell, 550 F.3d 542, 565 (6th Cir. 2008), cert. denied, 130 S.Ct. 1687 (2010); Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003), cert. denied, 543 U.S. 842 (2004); Phelps v. Duckworth, 772 F.2d 1410, 1415 (7th Cir. 1985) (en banc).  Federal courts do not possess supervisory powers over state court trials.  West, 550 F.3d at 565 (quoting Byrd v. Collins, 209 F.3d 486, 529 (6th Cir. 2000)).  Therefore, the state court's ruling on a claim of prosecutorial misconduct is reviewed deferentially.  Darden, 477 U.S. at 181; Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004), cert. denied, 544 U.S. 921 (2005) (citing Bowling, 344 F.3d at 512).

The Supreme Court has warned against "holding every improper and unfair argument of a state prosecutor to be a federal due process violation." Sawyer v. Smith, 497 U.S. 227, 235 (1990) (quoting Caldwell v. Mississippi, 472 U.S. 320, 338 (1985)).  The Court found that it is not enough that the prosecutors' remarks were "undesirable or even universally condemned."  Darden, 477 U.S. at 181.  The relevant inquiry is whether any improper conduct by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181; Donnelly, 416 U.S. at 643.

---

[1]  Given this directive from the Supreme Court, a district court should apply with caution any analysis which originally arose in the context of the broader review of direct appeal.  See generally United States v. Carter, 236 F.3d 777, 783 (6th Cir. 2001) (review of alleged prosecutorial misconduct on direct appeal); United States v. Carroll, 26 F.3d 1380, 1385 (6th Cir. 1994) (same).

12

In Donnelly v. DeChristoforo, for example, the Supreme Court noted "that the case was not one in which the State had denied a defendant the benefit of a specific constitutional right, such as the right to counsel, or in which the remarks so prejudiced a specific right as to amount to a denial of that right." Romano v. Oklahoma, 512 U.S. 1, 12 (1994) (citing Donnelly, 416 U.S. at 643). The Court contrasted the alleged improper comments at issue in Donnelly with two other cases of prosecutorial misconduct, which were found to violate due process.

In Miller v. Pate, the Court had found that the prosecution knowingly used false evidence, repeatedly representing a pair of stained underpants as "a garment heavily stained with blood," when in fact the prosecution knew at the time of trial that the pants were stained with paint. Donnelly, 416 U.S. at 646 (discussing Miller v. Pate, 386 U.S. 1, 6-7 (1967)).

In the well-known case of Brady v. Maryland, "the prosecutor had withheld evidence, a statement by the petitioner's codefendant, which was directly relevant to the extent of the petitioner's involvement in the crime." Donnelly, 416 U.S. at 647 (discussing Brady v. Maryland, 373 U.S. 83 (1983)).

In Donnelly, by contrast, the Court found that the remarks at issue did not amount to a denial of constitutional due process. Romano, 512 U.S. at 12 (citing Donnelly, 416 U.S. at 643). The Court stated that the "few brief sentences" in the prosecutor's long closing did not amount to a due process violation. Donnelly, 416 U.S. at 647. The Court instructed that a distinction should be preserved "between ordinary trial error of a prosecutor and that sort of egregious misconduct held in

13

Miller and Brady, supra, to amount to a denial of constitutional due process."
Donnelly, 416 U.S. at 647-648.

Similarly, in Darden, the court found the contested comments at issue did not deprive the petitioner of a fair trial: "The prosecutors' argument  did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent." Darden, 477 U.S. at 181-182.

Reviewing the law on prosecutorial misconduct, as determined by the Supreme Court in the cases discussed above, the court cannot find that the state court applied a rule that contradicts the governing law set forth in Supreme Court cases, nor that the state court confronted facts that were materially indistinguishable from relevant Supreme Court precedent, and arrived at an opposite result.  Williams, 529 U.S. at 405.

The rule applied by the state court is not contrary to the standard set out by the U.S. Supreme Court: "The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused.  The touchstone of analysis is the fairness of the trial, not the culpability of the prosecutor."  (Doc. 9, RX 13; Rick, 2009 WL 427522, at *9, quoting State v. Jones, 90 Ohio St.3d 403, 420, 739 N.E.2d 300, 318 (2000).)  The court will next consider the specific instances of alleged misconduct.

14

A.  During Opening

The first example of alleged prosecutorial misconduct raised by Rick on appeal was that the prosecutor improperly commented on his invocation of his right to an attorney.  (Doc. 9, RX 10, at 12-13; doc. 1, at p. 17.)  In his opening argument, the prosecutor said, concerning the questioning of Rick when he was apprehended:

> And so Patrolman Musser's saying, "Well, where's the gun?"
>
> He said, "The gun's in this truck behind my house."
>
> And he asked the Defendant, "Well, who pulled the trigger?"
>
> And the Defendant says, "I did."
>
> And Patrolman Musser asks the Defendant, "Well, why did you pull the trigger?"
>
> And his answer was, "I don't know."
>
> And then Patrolman Musser says, "Well, how many times did you shoot him?"
>
> And he says, "I don't know.  I think I'd better talk to a lawyer," and that was the end of any questioning.  The Officer wasn't permitted to question him any further at that point.

(Doc. 9, RX 13; Rick, 2009 WL 427522, at *9, quoting Trial tr., at 142.)  This questioning took place after Rick had been advised of his Miranda rights.  (Doc. 9, RX 13; Rick, 2009 WL 427522, at *4.)

The state court of appeals first noted that the trial court, after overruling a motion for mistrial, offered to give a limiting instruction on the comments, but defense counsel declined the instruction when it was offered.  (Doc. 9, RX 13; Rick, 2009 WL 427522, at *10.)  On the merits of the claim, the court found:

15

> . . . the trial court did not believe that Rick's request of an attorney was used as evidence of guilt and this Court agrees.  Rick's request of an attorney was only mentioned in opening statement and was not mentioned again during trial.  Moreover, it appears that Rick's request for counsel was only cited to show the chronology of events on the night he was apprehended, to show why questioning, immediately after Rick was arrested, terminated without further exploring the crime.  Accordingly, we do not find that this statement deprived Rick of a fair trial.

Id.

Rick argues that a defendant who asserts his right to silence cannot have that assertion used against him.  (Doc. 15, at 11.)  Rick contends that "[t]he prosecutor's comment on Rick's silence was improper."  Id.  He cites two Supreme Court cases in support:  Doyle v. Ohio, 426 U.S. 610, 617-618 (1976), and Wainwright v. Greenfield, 474 U.S. 284, 295 n.13 (1986).  Id.

In Doyle v. Ohio, the question before the Court was "whether a state prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest."  Doyle v. Ohio, 426 U.S. 610, 611 (1976).  "As part of a wide-ranging cross-examination for impeachment purposes," the prosecutor had asked the defendant why he had not told the frame-up story to the police when arrested.  Doyle, 426 U.S. at 613.  Although recognizing the importance of cross-examination, the Court concluded that the Miranda decision compelled its decision.  Id. at 617.  The Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the

Fourteenth Amendment." Id. at 619.  "The goal of Doyle is to prevent a jury from drawing inferences of guilt from a defendant's decision to remain silent after his or her arrest." Gravley v. Mills, 87 F.3d 779, 788 (6th Cir. 1996)

In Wainwright v. Greenfield, the prosecutor, in his case in chief, had introduced the testimony of two police officers who testified that the defendant "had exercised his right to remain silent and had expressed a desire to consult counsel before answering any questions." Wainwright v. Greenfield, 474 U.S. 284, 286-287 (1986).  In his closing argument, the prosecutor reviewed the testimony of these two officers, "and suggested that [defendant's] repeated refusals to answer questions without first consulting an attorney demonstrated a degree of comprehension that was inconsistent with his claim of insanity." Id. at 287.

The Court found that the due process violation arose from the breach of "the implicit assurance contained in the Miranda warnings 'that silence will carry no penalty.'" Wainwright, 474 U.S. at 290.  The Court concluded that "it was fundamentally unfair for the Florida prosecutor to breach the officers' promise to respondent by using his postarrest, post- Miranda warnings silence as evidence of his sanity." Wainwright, 474 U.S. at 295.  The Court also stated, in a footnote:

> With respect to post- Miranda warnings "silence," we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted.

Wainwright, 474 U.S. at 295 n.13.

17

Returning then to the alleged prosecutorial misconduct at issue here, the Supreme Court in Romano v. Oklahoma re-affirmed that the proper analytical framework in which to consider such a claim is that set out in Donnelly:

> There we addressed a claim that remarks made by the prosecutor during his closing argument were so prejudicial as to violate the defendant's due process rights. We noted that the case was not one in which the State had denied a defendant the benefit of a specific constitutional right, such as the right to counsel, or in which the remarks so prejudiced a specific right as to amount to a denial of that right. [Donnelly, 416 U.S. at 643.] Accordingly, we sought to determine whether the prosecutor's remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Ibid. We concluded, after an "examination of the entire proceedings," that the remarks did not amount to a denial of constitutional due process. Ibid.

Romano, 512 U.S. at 12.

Here, the court agrees that the prosecutor's reference in his opening statement, to Rick's invocation of his right to cease answering questions until he consulted an attorney, was improper. However, as the state court pointed out, this was only mentioned in opening, and was not referred to at all during trial. There is scant indication that the prosecutor intended for the jury to draw an inference of guilt from this passing mention of the defendant's decision to consult an attorney. Gravley, 87 F.3d at 788. The court finds that this brief mention is closer to the type of ordinary trial error which does not rise to the level of a due process violation, unlike the sort of "egregious misconduct" in Miller and Brady. See Donnelly, 416 U.S. at 647-648; see also Phelps, 772 F.2d at 1415 (greatly reduced possibility of harm where inappropriate remark is isolated) (citing cases).

18

Unlike in Doyle, the prosecutor did not refer to Rick's silence as "part of a wide-ranging cross-examination for impeachment purposes." Doyle, 426 U.S. at 613.  Unlike in Wainwright, the prosecutor did not introduce testimony from the police in his case in chief, and refer to that testimony again in closing, that Rick "had exercised his right to remain silent and had expressed a desire to consult counsel before answering any questions." Wainwright, 474 U.S. at 286-287. Reviewing the record in this case, and especially considering the answers that Rick volunteered to the police before falling silent, the court cannot find that the prosecutor's brief  remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Romano, 512 U.S. at 12 (quoting Donnelly, 416 U.S. at 643.)

In short, the court cannot find that the state court's ruling on this issue is contrary to clearly established federal law.

## B.  During Closing (I)

The second example of alleged prosecutorial misconduct raised by Rick in his petition is that, during closing argument, the prosecutor misstated the law regarding self-defense, "by arguing that because Mr. Rick engaged in criminal activity with Mr. Bell, he failed to satisfy the first prong of the affirmative defense, which is that Mr. Rick was not 'at fault' in creating the situation which gave rise to the affray." (Doc. 1, at p. 17; see also doc. 15, at 12.)

19

On appeal, Rick had contended that the prosecutor "misstated Ohio law regarding the affirmative defense of self-defense." (Doc. 9, RX 10, at 15.) The state court of appeals addressed this issue as follows:

> Rick argues that the State misstated the law during closing argument as follows:
>
>> I mean, if you take what the Defendant said and assume everything he told you is true, which I think much of it's way beyond what's true, it's his creative way to try to get out of trouble.  But if you took everything that he said as true, he and Sidney are both at fault.  I mean, let's look at this.
>>
>> He's buying drugs.  No one's forcing him to by drugs. He's- he claims he entered into a deal, an agreement with Sidney that Sidney can sell-
>
> After this statement, Rick's counsel objected, stated that "[the] issue is what happened at that point in time, not what happened days or weeks before."  The objection was overruled.  Rick now seems to contend that this statement was a misstatement of law.  However, this Court does not see how this amounts to a misstatement of law.  Moreover, Rick himself testified that he was doing drugs, that Bell was his drug dealer, and that he invited Bell to live in his home to have greater access to drugs.  We cannot find that this is a misstatement of law.

(Doc. 9, RX 13; Rick, 2009 WL 427522, at *11, citing Tr., at 761.)

Looking at the context of the prosecutor's comments during closing supports the ruling of the state court.  The prosecutor noted that it was Rick's burden to prove his affirmative defense of self-defense by a preponderance of the evidence. (Doc. 15, App., Tr., at 760.)  Under Ohio law, self-defense is an affirmative defense, and the defendant has the burden to prove all of the elements by a preponderance of

the evidence.  See, e.g., State v. Williford, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279, 1281 (1990).  Therefore, the prosecutor did not misstate the law as to Rick's burden.

The prosecutor then stated:

> He first has to prove he wasn't at fault in creating the situation.
> Secondly he has to prove that he had reasonable grounds to believe,
> and an honest belief that he was in immediate danger of death or great
> bodily harm, and that his only means of escape from such danger was
> by the use of force.

(Doc. 15, App., Tr., at 760-761.)  Again, this is a correct statement of the relevant elements of self-defense in Ohio.  See, e.g., Williford, 49 Ohio St.3d at 249, 551 N.E.2d at 1281 (quoting State v. Robbins, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979)).

The prosecutor then proceeded to argue that Rick could not prove the element that he was not at fault, as quoted, in part, by the state court of appeals above. (Doc. 15, App., Tr., at 760-761.)  As found by the state court, this is not a misstatement of law; this is simply argument, as to what conclusions the prosecutor contends that the facts will support.  Id. at 761 ("if you took everything that he said as true, he and Sidney are both at fault").  The court cannot find that the state court's ruling on this issue is contrary to clearly established federal law.

### C.  During Closing (II)

The final example of alleged misconduct raised by Rick in his petition is that, again during closing argument, the prosecutor expressed his opinion to the jury that the defendant was untruthful.  (Doc. 1, at pp. 17-18.)

On appeal, Rick had claimed that "the prosecutor told the jury that Mr. Rick was untruthful and that his affirmative defense was meritless." (Doc. 9, RX 10, at 16.) The state court of appeals ruled on this argument as follows:

> Rick argues that the State committed prosecutorial misconduct when it commented on Rick's truthfulness.
>
>> Let's talk about self-defense. And the reality is I don't think the self-defense issue is – it's really a non issue. It's an issue that's made up to try to get out of trouble in this case. And the reality is the Defendant can say anything he wants to try to get himself out of trouble. Doesn't make it true. And I think when you [....] talk about the facts, I think you will find this issue's not nearly as difficult as the prior calculation and design issue, which I think is the only issue in this case.
>
> (Tr.p.760).
>
> It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Williams, 79 Ohio St.3d 1, 679 N.E.2d 646, 1997-Ohio-407. However, the Ohio Supreme Court has also held that "a prosecutor may state his opinion if it is based on the evidence presented at trial." State v. Tyler (1990), 50 Ohio St.3d 24, 41, 553 N.E.2d 576 citing State v. Stephens (1970), 24 Ohio St.2d 76, 83, 53 O.O.2d 182, 186, 263 N.E.2d 773, 777.
>
> Two witnesses, Thacker and Foreman, testified at trial to different versions of Bell's death. Both Thacker and Foreman's testimonies were in direct contradiction with Rick's versions of events; they stated Bell was asleep and did not have a gun that evening. Therefore, the jury was forced to decide between two very different versions of events that night. The prosecutor does not so much express his own opinion on the credibility of witnesses, but opines that because Rick says it was self-defense, does not mean it was self defense. We cannot find that the State committed prosecutorial misconduct in the present case as the State's remarks did not effect Rick's right to a fair trial.
>
> Moreover, we do not find that the cumulative effect of Rick's claimed prosecutorial misconduct deprived him of a fair trial.

22

(Doc. 9, RX 13; Rick, 2009 WL 427522, at *12, quoting Tr., at 760.)

Again, because the state court of appeals based its ruling on state law, not federal constitutional law, the question before this court is whether the state court's ruling is contrary to clearly established federal law.  Rick refers the court to United States v. Young.[2]  (Doc. 15, at 14.)

In United States v. Young, a case on direct appeal, the Supreme Court was confronted with a situation where improper comments had been made by the prosecutor "responding to defense counsel's closing argument impugning the prosecution's integrity and belief in the Government's case."  United States v. Young, 470 U.S. 1, 2 (1985).  The Court stated that "[t]he principal issue to be resolved is not whether the prosecutor's response to defense counsel's misconduct was appropriate, but whether it was 'plain error' that a reviewing court could act on absent a timely objection."  Young, 470 U.S. at 6.  (Clearly, that would not be the standard applied by this court on habeas review.  See, e.g., Romano, 512 U.S. at 12; Donnelly, 416 U.S. at 643.)

In its discussion, the Court pointed out that

---

[2]  Rick also includes an extensive analysis of whether the prosecutor's conduct was "flagrant."  (Doc. 15, at 15-17.)  This discussion does not include any reference to Supreme Court precedent, thus, the court is unable to find that the state court's ruling(s) were "contrary to" clearly established federal law as to whether the prosecutor's allegedly improper conduct was "flagrant."  See generally  Price, 538 U.S. at 640 (state court did not apply "legal standard contrary to those set forth in our cases"); Williams, 529 U.S. at 412-413.  Young contains no specific mention of "flagrant" conduct.  (Nor does Donnelly, or Darden.)

23

> . . . a criminal conviction is not to be lightly overturned on the basis of
> a prosecutor's comments standing alone, for the statements or conduct
> must be viewed in context; only by so doing can it be determined
> whether the prosecutor's conduct affected the fairness of the trial.

Young, 470 U.S. at 11.  The Court concluded that, "viewed in context, the

prosecutor's statements, although inappropriate and amounting to error, were not

such as to undermine the fundamental fairness of the trial . . ."  Young, 470 U.S. at

16.

 Rick quotes from Young regarding the danger presented by improper

comments by the prosecutor.  (Doc. 15, at 14, quoting Young, 470 U.S. at 18-19.)  In

light of the state court's ruling in this case, it is worth quoting the Young Court's

discussion more fully:

> The prosecutor's vouching for the credibility of witnesses and
> expressing his personal opinion concerning the guilt of the accused
> pose two dangers: such comments can convey the impression that
> evidence not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus jeopardize
> the defendant's right to be tried solely on the basis of the evidence
> presented to the jury; and the prosecutor's opinion carries with it the
> imprimatur of the Government and may induce the jury to trust the
> Government's judgment rather than its own view of the evidence.
>
> The prosecutor's statement of his belief that respondent intended to
> commit a fraud contained no suggestion that he was relying on
> information outside the evidence presented at trial.  He supported his
> comment by referring to respondent's own testimony . . .

Young, 470 U.S. at 18-19 (internal citation omitted).

 Rick argues that the prosecutor's comments in closing "suggested to the jury

that the prosecutor believed the State's witnesses' accounts of the events, as

24

opposed to Mr. Rick's testimony, because he had heightened knowledge of the case."

(Doc. 15, at 14.)

> The Sixth Circuit recently addressed the issue of vouching:

> Generally, improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony.  It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying.

Wogenstahl v. Mitchell, No. 07–4285, 2012 WL 310819, at *15 (6th Cir. Feb. 2, 2012) (internal citations omitted).  The comments cited by Rick in the prosecutor's closing in this case do not involve "either blunt comments or comments that imply that the prosecutor has special knowledge."  Id.  See, e.g., doc. 15, App., Tr., at 760 ("when you evaluate it and look through it and talk about the law and talk about the facts").  There is no impropriety when the prosecutor's comments "reflect reasonable inferences from the evidence adduced at trial."  Wogenstahl, 2012 WL 310819, at *17 (internal citation omitted).  See also Ellison v. Acevedo, 593 F.3d 625, 638 (7th Cir. 2010) (distinction between prosecutor's personal opinion of guilt, and his submission of what the evidence establishes).

In any event, the relevant inquiry on habeas review is whether the state court's ruling was contrary to clearly established federal law.  This court cannot find that the state court ruling on this issue of alleged prosecutorial misconduct was contrary to clearly established federal law, as expressed in Supreme Court precedent.  Williams, 529 U.S. at 412-413.

### D.  Other Misconduct

In his Traverse, Rick also raises "further misconduct during defense counsel's cross-examination of an investigating detective."  (Doc. 15, at 11.)  The reference is actually to something which occurred during a sidebar conference.  Id. at 12.  However, this alleged misconduct was not raised in his petition (see doc. 1, at pp. 17-18), and so is not properly before the court.  See generally Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005), cert. denied, 547 U.S. 1074 (2006); Sowell v. Collins, 557 F.Supp.2d 843, 889 (S.D. Ohio 2008), aff'd, 663 F.3d 783 (6th Cir. 2011) (citing cases).

## V.  SUMMARY

The petition for a writ of habeas corpus should be denied.

The petition should not be granted on the first ground for relief, which was procedurally defaulted.  As to the second ground, alleging prosecutorial misconduct, Rick has failed to establish that the state court rulings on that claim were contrary to clearly established federal law, as determined by the Supreme Court of the United States.

26

<u>RECOMMENDATION</u>

It is recommended that the petition for a writ of habeas corpus be denied.


Dated:   Feb. 15, 2012              /s/ Kenneth S. McHargh
                                    Kenneth S. McHargh
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).